UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMIE W., | |
| Plaintiff, | CASE NO. C22-CV-5909-TLF |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | ORDER |
| Defendant. | |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's denial of Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned Magistrate Judge.

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

I.    BACKGROUND

Plaintiff filed an application for Supplemental Security Income (SSI) on July 16, 2019, alleging disability beginning December 1, 2004. AR 15. After the application was denied at the initial level and on reconsideration, Plaintiff requested a hearing before an

ORDER
PAGE - 1

Administrative Law Judge (ALJ). The ALJ held a hearing on June 14, 2021, and took testimony from Plaintiff and a vocational expert (VE). AR 36–58. On July 12, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 15–31. The Appeals Council denied Plaintiff's request for review on September 19, 2022, making the ALJ's decision the final decision of the Commissioner. AR 1–6; *see* 20 C.F.R. § 416.1481. Plaintiff appeals the denial of disability benefits to this Court.

## II.   ISSUES

(1) Whether the ALJ properly accepted the step five testimony.

(2) Whether the ALJ properly rejected the social limits offered by the state agency psychological consultant.

## III.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of disability benefits if it is based on legal error or not supported by substantial evidence in the record. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. At steps one through three, the ALJ found Plaintiff has not engaged in substantial gainful activity, has had one or more severe impairments, and has not had an impairment or combination of impairments that meet or equal the criteria of a listed impairment since the alleged onset date. AR 17–21.

At step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> she can stand and/or walk for a total of four hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can frequently reach, handle, and finger bilaterally. She can tolerate occasional exposure to extreme cold and vibration. She can tolerate no exposure to hazards such as unprotected heights or moving mechanical machinery. She can understand, remember, and carry out simple, routine tasks in a routine work setting involving no more than occasional workplace changes. She can never perform rapid pace assembly line work. She can tolerate occasional superficial interaction with the general public. She can tolerate occasional interaction with coworkers but not in a cooperative or team effort. She can tolerate frequent interaction with supervisors for up to 30 days, after which she can tolerate occasional supervisor interaction.

AR 21–22. Plaintiff has no past relevant work. AR 29. At step five, the ALJ found Plaintiff capable of making a successful adjustment to other work that exists in significant numbers in the national economy. AR 30. The ALJ thus concluded Plaintiff has not been under a disability since the date the application was filed. AR 30–31.

### 1. VE Testimony

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [their] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see* 20 C.F.R. § 416.960(c)(2). "Whether there are a significant number of jobs a claimant is able to perform with [their] limitations is a question of fact to be determined by a judicial officer." *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).

The VE testified an individual with Plaintiff's limitations would be able to perform at least three jobs: bonder, semiconductor (Dictionary of Occupational Titles (DOT) 726.685-066), with approximately 30,000 jobs in the national economy; bench hand (DOT

700.687-062), with approximately 22,000 jobs in the national economy; and garment sorter (DOT 222.687-014), with approximately 35,000 jobs in the national economy, which the ALJ "eroded to 20,000 based on need for positional changes." AR 30, 42. Relying on the VE's testimony, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform. AR 30.

After the ALJ issued the decision, Plaintiff submitted a letter to the Appeals Council attaching six pages of printouts, which purportedly contain contrary job-number estimates generated from the software program Job Browser Pro. AR 1, 327–35. The Appeals Council exhibited Plaintiff's letter and attached printouts as part of the record; however, the Appeals Council found Plaintiff's evidence did not provide a basis for changing the ALJ's decision. AR 1, 327–35.

Plaintiff argues the Commissioner failed to resolve the conflict raised by Plaintiff's rebuttal job numbers, which "evidence suggest[s] the job numbers offered by the VE were extremely overestimated." Dkt. 13, at 6. Plaintiff's contrary job numbers indicate only 16 bonder, semi-conductor jobs, no bench hand[1] jobs, and 181 garment sorter jobs existing in the national economy. *Id.* (citing AR 330, 332). An ALJ's duty to resolve a conflict between inconsistent evidence arises "only where the purportedly inconsistent evidence is both significant and probative, as opposed to 'meritless or immaterial.'" *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193–94 (9th Cir. 2022)). Conflicting job estimates may be significant and probative

---

[1] Plaintiff describes the bench hand occupation as "preparer," stating that the DOT code 700.687-062 connects to the preparer position. Dkt. 13, at 5 n.2. The DOT provides that "bench hand" is an alternate title to the preparer occupation. DOT 700.687-062. Therefore, the Court uses the term "bench hand" consistent with the VE's hearing testimony and the ALJ's decision. *See* AR 30, 42.

ORDER
PAGE - 4

where they "were produced using the same methodology as that used by the VE" or were provided by an individual with "identified expertise in calculating job figures in the national economy." *Kilpatrick*, 35 F.4th at 1194; *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022).

Here, the VE testified he based his job number estimates on Bureau of Labor Occupational Employment Statistics, census data, information provided by Work Source and Employment Security Department, labor market surveys conducted by the VE himself and other industry professionals, and information from the Occubrowse program. AR 44–45. Plaintiff's letter to the Appeals Council provides no information about how Plaintiff's job numbers were produced – stating only that they were obtained from Job Browser Pro – and neither Plaintiff's letter nor the six pages of printouts themselves indicate that Plaintiff's job numbers were produced using the same methodology as the VE at the hearing. *C.f. White*, 44 F.4th at 837. Further, Plaintiff's evidence contains six pages of raw data, yet Plaintiff fails to provide any "interpretation necessary to make the pages meaningful to a court." *Wischmann*, 68 F.4th at 507; *see also id.* ("Given that SkillTRAN's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information from official and private sources, . . . experience in using the program and interpreting the output would ordinarily be necessary to produce probative results."). Such raw data "is not comprehensible to a lay person," and "an ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide." *Id.* (internal citations and quotation marks omitted).

Because "uninterpreted data is not probative," *see id.*, and Plaintiff has not shown that the data was produced using the same methodology as that used by the VE, Plaintiff's

ORDER
PAGE - 5

job numbers do not give rise to a material inconsistency that the ALJ was required to resolve. Plaintiff has further failed to show that the ALJ erred by relying on the VE's testimony. *See Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020) ("Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding.").

**2. Medical Opinion Evidence**

Dr. Gary Nelson, Ph.D., a state agency psychological consultant, opined Plaintiff retains the capacity to carry out complex tasks; maintain concentration, persistence, and pace for up to two hours continuously; maintain adequate attendance; complete a normal workday and workweek within normal tolerances; interact with others on an occasional/superficial basis and accept instructions from a supervisor. AR 84.

The ALJ found Dr. Nelson's opinion unpersuasive and "underestimates the claimant's limitations" in a manner inconsistent with evidence in the record. AR 27. The ALJ subsequently included in the RFC "an additional limitation to frequent interaction with supervisors for up to 30 days, after which she can tolerate occasional supervisor interaction." AR 24.

Plaintiff argues the ALJ improperly "amend[ed] the limitation to occasional/superficial contact with others to include the capability to frequently interact with supervisors for up to 30 days while offering no evidence to support this conclusion." Dkt. 13, at 9. Plaintiff further argues the ALJ failed to offer a hypothetical to the VE that limited Plaintiff to occasional and superficial interaction with others without the 30-day addendum. *Id.* Plaintiff's argument fails to show error in the ALJ's RFC assessment. The

ORDER
PAGE - 6

ALJ rejected Dr. Nelson's opinion as unpersuasive, and Plaintiff does not challenge the ALJ's evaluation of Dr. Nelson's opinion. Limitations from properly discounted evidence do not need to be included in the RFC finding or the VE hypothetical. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005). Therefore, the ALJ was not required to account for Dr. Nelson's opinion that Plaintiff could occasionally or superficially interact with others in the RFC or in the hypothetical posed to the VE.

Even if the ALJ erred in evaluating Dr. Nelson's opinion, any error would be harmless in this case. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination"). Dr. Nelson limited Plaintiff to occasional or superficial interaction with "others" yet assessed no significant limitation in Plaintiff's ability to accept instructions, respond appropriately to criticisms, and accept instructions from supervisors. AR 84. Dr. Nelson similarly assessed no significant limitation in Plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 84. The ALJ's RFC limits Plaintiff to "occasional superficial interaction with the general public," occasional interaction with coworkers and, after 30 days, occasional interaction with supervisors. AR 21–22. The ALJ's RFC thus not only accounts for Dr. Nelson's limitations but also includes additional limitations that benefit, rather than prejudice, Plaintiff. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (finding harmless an ALJ's "overinclusion" of limiting factors in the hypothetical posed to a vocational expert because it benefited the claimant); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is

responsible for translating and incorporating clinical findings into a succinct RFC."). Moreover, according to the DOT, none of the jobs identified at step five involve talking or significant interaction with people, including taking instructions or helping. DOT 726.685-066 (bonder, semiconductor); DOT 700.687-062 (preparer/bench hand); DOT 222.687-014 (garment sorter). Therefore, even if the ALJ had erred in evaluating Dr. Nelson's opinion, such error would be harmless because it would be inconsequential to outcome of the case.

### IV.   CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 24th day of July, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge